May it please the Court, my name is Allison Cordova and I'm here on behalf of the Plaintiffs in this matter, James Steinle, Elizabeth Steinle, as well as the estate of Catherine Steinle, to appeal the motion to dismiss by the lower court. Here we have the lower court dismissed the Plaintiffs' claims against the City and County of San Francisco and Sheriff Marcarini on discretionary immunity grounds. That is the only issue that the lower court reached. It is also the primary and only question that we presented in our opening briefs to the court. And so just as a preliminary matter, we would ask that the court narrowly decide this issue on... There is a standard principle that we apply in every case, which is that if an alternative ground for affirmance exists that was presented to the district court, we are to affirm on any of those grounds that's available. Thank you. So are you arguing that that principle doesn't apply in this case for some reason? No, I'm not. And I'm prepared to argue duty. I was just... It is a request of the court preliminarily that we were asking that duty should be remanded for an issue of first impression with the trial court. It's a beginning request, but I'm prepared to address duty and will do so now for the court. So I think that the real issue here and the big question that is confusing is what is the proper duty analysis when we are talking about injury to a third-party victim? And the defendant says we should go to a special relationship analysis. And I believe that that is squarely against the law here, because we have to start with the two fundamental principles of duty and negligence law, which are... Counsel, is on duty is your argument that this duty would have been owed to any person at all who would have been injured by the releasee? Slightly, but there's a distinction there, because we have California Civil Code 1714, and it's broad. There isn't a limitation as to who is affected. It's the general standard that you have to use ordinary care in conducting your activities. The way the courts narrow that broad duty principle is by applying the role and factors. And a great example of this is the recent decision in Kessner by the California Supreme Court in 2016. We have a third-party victim there who was exposed to asbestos by an employee who brought it home on their clothing. And what the Court said is that the Court did not perform a special relationship test, and, in fact, the Court explicitly rejected a special relationship test and said that the idea of where we're going to cut off the duty under 1714, that you must act with ordinary care in your activities, is the role and factors and primarily foreseeability. And the Court limits duty in that case to only household members. And it says that household members, it's foreseeable here. The duty of — sorry. So it's — the Court says that asbestos exposure requires more than incidental and sporadic contact, that asbestos exposure requires there to be a continuous and a regular contact. And, therefore, people who live in a household with an employee who's bringing asbestos home on his clothes, it's reasonably foreseeable they will come into significant contact with the asbestos and be exposed and, therefore, have — be put at an unreasonable risk of harm. Counsel, there's a — you know, the language is different, but in a sense there's an attenuated causation that's being described there. And certainly here, the Court permits the claims against the United States to continue because the ranger left this loaded firearm where it could be picked up. And I guess I'm concerned that there's no real sort of causation between the acts that you're alleging against the city. There's this sort of unforeseeable intervening cause that has nothing to do with the city. They can't foresee that a ranger's going to leave a firearm lying around. So why is this foreseeable in any way? Thank you, Judge. And I think that foreseeability — right, we have two questions of foreseeability, because foreseeability comes into play in the duty analysis as well as it comes into play with proximate cause. And when we look at it under duty, we have Bigby and Kessner that both say that it's not the specific character of the event or the harm. It's the general nature. We do not look at was this foreseeable that a particular plaintiff would be injured by a particular defendant in this particular way. It's the general nature. And as Kessner — But why is it foreseeable that anybody would have been harmed? That's, I guess, my problem with it. Thank you, Judge. And it's not about undocumented status. It is about the safety and felony nature that is involved here in terms of the analysis. So we have a city administrative provision in the sanctuary policy that explicitly creates a caveat for communicating with ICE in regards to prior convicted felons. It doesn't say that they have to, but there is a caveat to allow for that. And the idea here is that before Sheriff Marcarini created a no-contact policy, the sheriff's deputies could make a case-by-case determination about the inmate who is currently in their custody, who's a prior convicted felon, and whether or not that inmate presented himself as a safety risk to society, where it would not be unreasonable for the sheriff's department to take on the very, very low burden of making a phone call to ICE to tell them one piece of information, the date they intended to release the person. On the other hand, we're talking about it may not happen all the time. That's correct. This doesn't have to be highly probable to be foreseeable. And Bigby says that as well as Kessner. It is not about something that this may happen all the time. It's, is this something in our modern world that would generally be a consideration in guiding our conduct when we make a decision, when we make a decision regarding the conduct at issue? So here the question is, when we have someone with, specifically to Mr. Sanchez, we have someone with an extensive, who is a prior convicted felon, who has displayed a repeated disregard for the law, who has serious narcotic felonies on his record, and who also presents himself as currently an individual who will be prone to reckless behavior by the sheriff's counsel. I don't want to interrupt your answer, but I think you also should discuss the discretionary function exception that the district court relied on the 820.2 issue. Thank you. And I hope that I answered the prior question and fully. If not, please, please ask further questions. But in terms of the discretionary immunity, the idea here is that the court summarily said that none of the statutes that Plaintiff cites to requires the sheriff's department to contact ICE or requires the sheriff's department to create a policy where they don't provide release date information. And so it's almost like he takes a very, a cleaver kind of to discretionary immunity. And the idea here is we're saying he created a policy of no contact with ICE. That is one of the wrongful acts. The other wrongful act is he failed to respond to an ICE request for information regarding this inmate who's a prior convicted felon. So, counsel, even if we were to agree with you that people could view what the statute says otherwise, why would that have been not something that was the result of exercise of discretion vested to him? Because, of course, it's not up to us to decide the wisdom or lack of it of the policy. Thank you, Judge. Because the policy of no contact, if that's the policy, it absolutely violates California Health and Safety Code 11369, which says that if you have an inmate in custody who has been convicted of one of these following drug offenses, you shall contact ICE. While that is not the facts at issue here, the question is, does he have immuno? But that doesn't relate to, excuse me, that doesn't relate to release. But the question is, if someone, if that statute that you're referring to does not, as I read it, require communication about a release date, it requires a different kind of communication than the one that you're claiming was a problem in this case. I agree, Your Honor. All right. If that's so, then what is, would you continue to answer Judge Bennett's question about why the memo itself and the decision not to call with the release date isn't a discretionary act or two discretionary acts? I don't think that you can divide them. We're alleging there was one act that he created a policy of absolute no contact with ICE. He eliminated all discretionary case-by-case decision-making on safety factors to respond to a request for information. That's the act. And that's a policy question. And that is not? While it may be an act of policy, he's not vested with discretion to violate the law. He's not vested with discretion to create a policy that violates the law. And while it may not violate the law under the facts of this case, it violated his authority to pursue that policy. And under the law, you are not entitled to discretion to create a policy that violates the law. Except I'm looking at the memo, and I don't see in there any requirement that the fact of someone's incarceration can't be communicated. Your Honor, if the memo and the content of the memo is going to be taken on judicial notice for the material asserted therein, one request that the plaintiff would make is a request to amend our complaint and to remove any reference to the memo because as an officer of this court, what we understood and what we can properly plead is that Sheriff Mercoremi created a policy of absolute no contact with ICE. So if the March memo is fatal to our claims, we would ask to amend it and remove it because we believe in what we were trying to iterate in our complaint is despite sending this document around. Did you ask the district court for permission to amend the complaint that was submitted? Yes, we did, Your Honor. Okay. And is that one of the issues? I didn't focus on that as an issue on appeal. Did you raise that? I'm just asking. I don't remember it. We have asked for amendment at the end of our opening brief, Your Honor. Here, in this, in your blue brief here? Yes. Okay. Thank you. Yes. And the other situation, sorry, my time is almost up, but on the other issue, it's a ministerial act in regards to Mr. Sanchez himself. And I think what's important here is to highlight the difference between Bologna and our case, the Bologna v. CCSF case, because that seems really factually similar to our case, but it's very different on duty. And the reason being is in Bologna, there was no request made by ICE. It specifically says, Plaintiffs also allege that if at the time of any of Ramos' prior arrests, San Francisco officials had reported Ramos to ICE, it is a certainty that ICE would have initiated removal proceedings against him and that Ramos could have been deported. That's at page 433. So then the court goes, Plaintiffs acknowledge that absent a special relationship, public entities ordinarily bear no common law duty to protect individuals. So they, the Plaintiffs, assert that they are liable under negligence per se provisions. Here we have a different situation. ICE flagged this individual. ICE wanted to detain this individual and was lawfully pursuing them for detainment. And so here we have the key difference between a duty to protect versus a duty to request made by another law enforcement agency about an inmate in your custody. We're not asking that they respond to every request. We're not asking that they have to detain anyone. It's simply that they act with ordinary care in managing the information related to their inmates when it's requested of them by ICE. Thank you. We'll give you a minute for rebuttal since we asked some questions. I appreciate that, Judge. Thank you. Good morning. May it please the Court. My name is Margaret Baumgartner. I'm a Deputy City Attorney, and I represent Sheriff Marcorimi and the City and County of San Francisco in this matter. As Judge Graber indicated, the issues in this case are not just whether there is discretionary immunity under 820.2, but also whether there is a duty under California negligence law and whether there is causation under California negligence law in this particular case. So I'll discuss all three of those issues. First of all, the issue of duty. There is no case that has ever extended a negligence duty as far as plaintiff's request in this particular case. Under California Supreme Court law, starting with Thompson in 1980, there is no duty to protect a third party from the criminal acts of somebody who is released from prison or not arrested or otherwise allowed to be in the public through probation or any other act of the government entity. And there's good reason for that. It's a duty that would extend to extraordinary extent on foreseeable occasions things that are not within the control of the government entity itself. That lack of duty is acknowledged not just in the cases of Thompson and Zellig and also, as plaintiff's counsel noted, in Bologna, but it's also part of the immunity statutes in California which were not specifically addressed by Judge Sparrow below, including I believe, say, 45.8, that there's no liability for release of prisoners for whatever reason. There's also the lack of causation in this particular circumstance. In our brief in ER, the excerpt of record 266, we list the number of discretionary events that would have had to have occurred to prevent the particular action on the pier in this particular case that resulted in the unfortunate death of Catherine Steinlein. In the case of Fleming, specifically addressed by the plaintiff's counsel on this, they have sufficiently alleged in their complaint cause in fact, correct? They've alleged that if he, if Ice had been notified, he would have been taken into custody, and thus the decedent would not have died. That would establish cause in fact, which is one of the elements of proximate cause, correct? No. That is a conclusory allegation that is not, that there's no deference given in a motion to dismiss in that particular circumstance, simply because there's, it's a conclusion. Under Iqbal and Twombly, we don't have to assume that those. Don't they quote Ice saying we would have taken this man into custody and this tragedy wouldn't have occurred? Isn't that in specifically in paragraph 37 and footnote 8 of the complaint? The allegation is not, it's, my understanding of that allegation is not based on fact. It's simply an allegation that, that somebody believes that would have occurred. Again, it's speculative. And again, the question of causation, alleged causation requires more than simply Ice would have taken him to custody. There's a lot of other discretionary acts that would have had to have occurred for him to be permanently removed from the streets, including actions by the BIA and various other entities that would have had to address his particular concerns. There is a case that is not cited in the briefs because we didn't get into the issue of causation in the briefing that specifically says on a motion to dismiss allegations of causation that something would have occurred. For example, a court would have done something about a particular matter is insufficient to actually state a claim. There has to be more than that. Well, here Ice asked for the information and they weren't given it, and the complaint says that if Ice had been given it, he would have been taken into custody. So, I mean, clearly the district court didn't rely on this below, but I don't understand why that isn't sufficient for a motion to dismiss on at least the issue of cause and fact. Well, there is other things that would have had to occur. There is no dispute here that provision of release date information, which is what's at issue here, is a voluntary act on the part of the sheriff. There is no legal requirement that in this particular circumstance without a warrant, that release date information be provided. So there is, again, another discretionary act that would have had to occur, assuming that, again, what plaintiffs claim to be the fault here, which is the issue. Well, opposing counsel says a discretionary act can't be to create a policy that violates the law. She argues that this policy violates the law. Can you respond to that? Yes. This policy does not violate the law. It was particularly with regard to release date for a number of reasons. First of all, it is not, as plaintiffs claim, a no-contact policy. What this policy did was Sheriff Mercorimi was managing his employees. He was saying if you have a request from ICE for voluntary information, we're going to address it by looking at it and making an individualized determination at the upper levels of management about whether we're going to be providing that information. So this was not an absolute no-contact policy. This was a procedure by which contact would be made. And also that it is also not illegal to prevent or to discuss release dates. Again, the section that's relied on is 1373, 8 U.S.C. 1373. That does not extend to release dates. It talks about immigration status only. The Federal government knew his immigration status. But, counsel, the policy does say SFSD staff, et cetera, shall not provide the following information to ICE, citizenship, immigration status of any inmate. That seems to be clearly contrary to Section 1373. So if counsel's argument is that because the policy itself contains an illegal provision, that it can't be protected by the discretionary act immunity, what's your response to that? There's certainly no causation issue here. As Judge Sparrow noted in his order, the issue of whether immigration status information was going to be provided is not the issue because the Federal government already knew his immigration status. They were very aware of what his immigration status was. So to the extent that there's a prohibition of and to the extent that it violated 1373, that is a different issue from the issue of release dates, which is the alleged causation here. I agree with you that it's a different issue, but it seems like counsel is arguing today that because the policy contained some illegal provisions, that the policy itself, which is what the complaint is based on, can't be protected by the discretionary act function because there is no discretion to violate Federal law in issuing a policy. What's your response to that? So Sheriff Mercorimi had a lot of factors to consider. This is the exact type of situation where 820.2 applies. He is governing a complex custodial environment that has many concerns. One of those concerns is how to comply with all of the different provisions of the law, not just 1373, but also, for example, the local sanctuary city policy. And he needed to be able to govern how that was going to occur. Counsel, as you're answering Judge Bennett's question, could you fold in the following consideration? In Government Code 820.2, it provides immunity for the exercise of discretion whether or not such discretion be abused. And is it your view that even if a discretionary policy violates a statutory duty, there's immunity because that is merely an abuse of discretion? Or is there some other analysis that applies? So first of all, this ‑‑ First of all, this ‑‑ I'm sorry, now I have an echo. In this particular case, there's a lot of different factors that went into it. There was an exercise of discretion, and obviously immunity wouldn't exist if there was a requirement that everybody interpret a particular law in the way that ultimately gets interpreted. When Sheriff Mercorimi issued this particular memo, there were a lot of issues about how to, again, weave between all of the different requirements, legal requirements, and he made a considered decision on how to do that particular thing. The fact that it may or may not, one provision of it may or may not have ultimately been decided to contradict the law is not the issue. He made a decision, right or wrong, as Judge Bennett noted earlier. It's not the question of whether it's wise. It's whether he made a reasoned decision, and the answer is obviously yes. He made a reasoned decision to require that provision of information to ICE flow through the upper management of the Sheriff's Department. There are other reasons also that it's we're not here on issues directly related to how the Federal government is interpreting 1373, but there are all the Federal cases that I've looked at, or most of the Federal cases that I've looked at, have in fact found 1373 to be unconstitutional under the anti-commandeering provisions. You're not asking us to decide the commandeering issue, are you? Not unless it's critical to the Court's decision in this case. I don't believe that that's necessary in this case. I think that the motion to dismiss can be affirmed on issues of California negligence law, specifically duty and causation, and I also believe that no matter what the interpretation of 1373 is, that 820.2 applies to prevent, to create immunity in this particular case. So the only other issue that was raised with respect to Sheriff Mercury's exercise of discretion had to do with the Public Records Act. That was not an issue raised below, but there's no indication that that section, nor 1373 for that matter, create any kind of mandatory duty that would be subject to negligence liability under Government Code Section 6 or Section 669, which is the, or it's actually Code of Substitution, I believe, 669, which is the negligence per se cause of action. There's no indication that any of those laws that were ever cited, either 1373 or the Public Records Act request, were adopted for the particular purpose of preventing harm by criminal acts to an unforeseeable third party. With regard to the Public Records question, the way I read the complaint in this case was that ICE asked for certain information, but there's nothing in the complaint to suggest that ICE actually made a records request. Is that consistent with your understanding of the record? Yes, that is consistent. There's a lot of details about public records requests, and you basically have to identify it as a public records request, and there's no indication here that ICE ever made what would be considered a public records request. There's also, this is future information. This is not information that was contemporaneous, as the County of Los Angeles, or the California Records case says needs to, is what the Public Records Act applies to as contemporaneous information. So, in summation, this Court should affirm the dismissal of the complaint against the City and County of San Francisco based on Sheriff Mercury's acts in adopting the, what we call the March Memo, under all three bases, duty, causation, and immunity. Yes, and, yeah, I do. That seems to leave out Government Code Section 845.8. Is that incorporated in your comment about immunity? Because, in many ways, that seems, just speaking for myself, perhaps the closest fit to the issues in this case. I do believe that's true, and I did raise that in the motion to dismiss. Initially, the Court did not rule on it. Yes, and you mentioned it earlier, but you didn't mention it in your summary at the end. So I was just, that's still one of your claims, I take it. It is definitely one of my claims, and I do believe that it is the most direct immunity that applies. It's immunity for release of prisoners. Plaintiffs have attempted to plead around that particular immunity by saying it's not the actual release of the prisoner, it's the failure to provide information, which is one of the reasons I believe Judge Sparrow, and in this argument, I looked at the discretionary act immunity because I don't think, I believe that the issuance of the memo is a discretionary act, and in any case we would not be liable for release of a prisoner for any reason whatsoever, which is what 845.8 states. Thank you. Thank you. Ms. Cordova, you have one minute for rebuttal. So first and primarily, I think it was clear hearing the other side that there are a lot of facts that are being added in here at this stage, and on a motion to dismiss, I would say that that is improper and they can't be considered at this time, such as Sheriff Mercorini made a reasoned decision and that he considered a lot of factors before issuing this policy. He consulted with his legal department. He looked at all these laws. None of that's on the face of the complaint. This is why oftentimes discretionary immunity is left to a later stage to decide because oftentimes it's a question of fact. It's a question of whether or not discretion was actually exercised, and that's in our brief, our opening brief under our discretionary immunity argument. The other thing that's a question of fact is proximate cause. And this is in our underlying opposition. It's in the record as ER231. And it says, and it quotes Bigby, the proper classification of an intervening act as a concurrent cause or as a superseding cause presents a question of fact which rarely can be resolved on a motion to dismiss. In addition to that ‑‑ Thanks. Oh, sorry. Counsel, you've exceeded your time, and I think we fully understand your position. Thank you, Judge. Thank you. The case just argued is submitted for decision, and we appreciate very helpful arguments from both counsel. It's a very challenging case.
judges: Thacker, Graber, Bennett